KONICKI, D.B.A. SEAL-AWAY OF KETTERING, APPELLEE, *v.* SALVACO, INC.; STONE LEASING CO., APPELLANT.

(No. 8187—Decided January 6, 1984.)

*Mr. G. Jack Davis, Jr.,* for appellee.
*Mr. Donald E. Ely,* for appellant.

BROGAN, P.J. Salvaco, Inc. was the manufacturer of certain asphalt sealing equipment referred to as the "SCST." In early 1980, Salvaco engaged itself in the active promotion of the sale and/or lease of this equipment directed towards individuals interested in starting or expanding their own business. In response to said promotional activity the plaintiff, Kenneth W. Konicki, entered into negotiations with Sam Cowart, a Salvaco representative, in March 1980. The parties agreed to enter into a lease-purchase agreement. In order to work out an appropriate financing arrangement Salvaco contacted Stone Leasing Company ("Stone Leasing"). Stone Leasing agreed to purchase the equipment from Salvaco for $11,000 and in turn lease said equipment to Konicki. Two separate leases were prepared by Stone Leasing and presented to Konicki by the Salvaco representative. One lease covers the lease of the sealing equipment itself, while the other concerns the lease of a trailer needed to transport the SCST.

These leases obligated Konicki to pay Stone Leasing certain monthly installments for sixty months. Upon the expiration of the lease term Konicki was given an option to purchase the equipment for $1,000 and the trailer for $100. The lease further contained a warranty disclaimer in bold print, wherein Stone Leasing disclaimed any and all express or implied warranties. Paragraph nine of the lease agreement did provide, however, that the lessee would be provided by the lessor with any manufacturer's warranties covering the equipment.

Upon receipt of the equipment in May, Konicki discovered it failed to operate properly. Apparently, the pumping mechanism was faulty, thereby preventing the equipment from properly spraying the sealing material. In addition the equipment was improperly balanced, causing problems in transporting it on the trailer. Konicki immediately notified the manufacturer (Salvaco) of the problems.

Several attempts were made by the manufacturer to correct the defects to no avail. Finally, at some point in time undisclosed in the record, the manufacturer refused to attempt to fix or incur any further expense in having the SCST

repaired. Konicki notified Stone Leasing shortly after the problems were discovered, and maintained contact with Stone Leasing throughout his endeavors to have the equipment repaired. The record does not disclose, however, whether Stone Leasing was ever notified of Salvaco's ultimate refusal to continue efforts to correct the defects.

In March 1981, Konicki ceased making his lease payments and filed his complaint against both the manufacturer and the lessor, Stone Leasing. The record fails to reflect whether or not Konicki conveyed his reasons for nonpayment to Stone Leasing. The record further fails to indicate any offer on behalf of Konicki to return the defective equipment, nor a request for a refund of the $4,365 he had already paid. In fact, Konicki admitted he continued to use the equipment as a holding tank while performing certain jobs even after the defects were known. The equipment was finally re-acquired by Stone Leasing only after it had commenced an action to replevy the goods.

In order to meet the obligations he had incurred based on his expectations the equipment would perform as warranted by the manufacturer, Konicki was forced to subcontract his jobs. He consequently incurred substantial damages, encouraging him to institute the present action. Konicki's complaint alleges both Salvaco and Stone Leasing are liable to him for breach of express and implied warranties.

Prior to trial a settlement was reached as between Konicki and Salvaco for $20,000. This stipulated judgment is part of the decision and judgment entry of the trial court. Trial proceeded on Konicki's claim against Stone Leasing and on Stone Leasing's counterclaim against Konicki for the balance due on the lease. At trial Konicki took the position that the transaction between himself and Stone Leasing was in reality a sale. He argued further that the Uniform Commercial Code therefore applied and that he had effectively revoked acceptance of the equipment.

The trial court concluded that (1) the transaction was in actuality a sale regardless of the use of the term "lease"; (2) R.C. 1302.66, right of revocation of acceptance, was applicable; (3) Konicki did properly and effectively revoke acceptance to the seller/lessor; (4) Konicki was entitled to recover the $4,365 he had paid; and (5) Stone Leasing was not entitled to recover under its counterclaim. Additionally, the court concluded Stone Leasing failed to communicate to Konicki, to his detriment, a ninety-day, limited manufacturer's warranty.

From this judgment Stone Leasing has timely filed a notice of appeal. Stone Leasing sets forth two assignments of error, the first of which maintains that:

"The court's legal conclusion that plaintiff-appellee revoked his acceptance of the leased equipment is not sustained by the evidence, and therefore the judgment rendered in favor of plaintiff-appellee, and against defendant-appellant, Stone Leasing Company, for the amount it had received pursuant to the terms of the equipment leases is contrary to law."

Stone Leasing essentially argues the judgment is against the weight of the evidence, as the elements of R.C. 1302.66 upon which the court relied were not sufficiently established. As a reviewing court, we may reverse a judgment on these grounds only where the judgment is not supported by some competent, credible evidence going to all the essential elements of the case. *C. E. Morris* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]. Our review of the record reveals each element of R.C. 1302.66 was not adequately proved and we must therefore agree with the appellant.

R.C. 1302.66 provides:

"(A) The buyer may revoke his ac-

ceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it:

"(1) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

"(2) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(B) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(C) A buyer who so revokes has the same rights and duties with regard to the goods as if he had rejected them."

In order for a complainant to prevail under this provision it is essential each element of division (B) be properly established, to-wit: (1) revoke within a reasonable time; (2) before any substantial change in condition; and (3) give notice to the seller. Stone Leasing challenges the court's findings as to all three elements. As to the first requirement we shall not disturb the ruling as the question of reasonableness is within the sound discretion of the trial judge. The second element is also supported by the record as certain permissible inferences may be made that the changed condition resulted from the existing defects in the equipment.

However, we must disagree with the trial court's conclusion that the evidence supports a finding that an effective revocation occurred. In order to effectively revoke, R.C. 1302.66(B) requires that the buyer notify the seller of the revocation. The Revised Code fails to designate the form or content required to meet the notice requirement. We are, however, of the opinion it would be un-fair to conclude under the facts presented that adequate steps were taken to so notify this seller.

Revocation of acceptance and rejection of tendered goods are not to be confused with one another. The former allows non-conforming goods to be returned and money refunded after acceptance while the latter requires the goods initially be rejected prior to acceptance. Although a distinction exists between the two, they are similar in that they both require timely notice to the seller to make the rejection or revocation effective. See R.C. 1302.61 and 1302.66. They are also similar in that courts have generally treated the adequacy of notice for each to be the same. The problem lies in what constitutes adequate notice of both rejection and revocation.

Certain authorities require such notice to be carefully drafted and in writing. See White & Summers, Uniform Commercial Code (1980) 315, fn. 63. Ohio courts, however, have not required such rigid adherence to form. Rather Ohio courts have recognized that oral revocation is adequate. See *Evans* v. *Graham Ford, Inc.* (1981), 24 O.O. 3d 140; see, also, *S&S Bowling, Inc.* v. *Southern Bowling & Billiard Supply Co.* (January 14, 1981), Clark App. No. 1414, unreported; and even that notice of non-acceptance or revocation of acceptance may be implied from conduct. *Kabco Equip. Specialists* v. *Budgetel, Inc.* (1981), 2 Ohio App. 3d 58. In *Kabco* the Franklin County Court of Appeals concluded that the filing of a lawsuit for return of the purchase price three months after the goods were tendered was sufficient to imply notice of rejection.

Our research discloses that *Kabco* goes as far as any other decision in determining that an effective notice of rejection or revocation occurred. However, as liberal a construction as is provided therein, we find the present mat-

ter sufficiently distinguishable such that it would be unfair and unreasonable to conclude Konicki's conduct implied notice of revocation.

In the present matter the record reveals the following facts. In the middle of May 1980, Konicki received the equipment it had purchased from Stone Leasing. It was immediately discovered that the goods did not conform to that which was warranted. Steps were taken on several occasions to correct the problems. Stone Leasing was made aware of these problems, as well as Konicki's efforts to rectify them. Finally, at some point in time not revealed in the record the manufacturer refused to incur further expenses in correcting the defects. The record further fails to disclose whether Stone Leasing was notified of the manufacturer's ultimate refusal to attempt to fix the faulty equipment. In March 1981, nearly one year after receipt of the goods, Konicki stopped payment under the lease agreement and filed his complaint. The complaint seeks to hold defendants Salvaco and Stone Leasing liable for alleged breaches of various express and implied warranties. No allegation of revocation, nor prayer to recover the purchase price, was made in this complaint.

The record further discloses that Konicki continued to use the equipment as a holding tank after the defects could not or would not be corrected by the manufacturer. In addition Konicki never offered to return the goods to the lessor-seller, Stone Leasing, requiring Stone Leasing to institute legal proceedings to replevy the goods. Even upon re-delivery of the equipment no notice of revocation or request for reimbursement appears from the record below.

The official comment to R.C. 1302.66 provides in part:

"5. The content of the notice under division (B) is to be determined in this case as in others by considerations of good faith, prevention of surprise, and reasonable adjustment. * * *''

The Revised Code also provides, under its definitions applicable to the Ohio Uniform Commercial Code, at R.C. 1301.01 that:

"(Z) A person 'notifies' or 'gives' a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person 'receives' a notice or notification when:

"(1) it comes to his attention; or

"(2) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications."

The facts presently before us are inconsistent with the concerns enumerated in these provisions. Stone Leasing was alerted by the complaint that it was being sued for breach of warranties. Consequently, it prepared accordingly. It came to court prepared to defend against these allegations. To then permit Konicki to change his theory of recovery on the date of trial without any notice whatsoever certainly violates any concern of preventing surprise. The purpose of Ohio notice pleading provisions is to do exactly that, to-wit, to notify a defendant of the allegations against him so that he might prepare a defense thereon. The first indication of the revocation of acceptance — demand-for-money-paid theory — arose during Konicki's closing argument. To permit such would obviously defeat the purpose of notice pleading, as well as encourage the use of surprise tactics at trial.

As R.C. 1301.01(Z) points out, a person gives notice by "taking such steps as may be *reasonably* required to inform the other" (emphasis added). As discussed above Konicki took no steps whatsoever. He never offered to return the equipment, nor did he request his money back. He continued to use the equipment and allowed nearly a full year to pass before taking remedial action, an action which was based upon breaches of

warranty, *not* revocation and demand for the purchase price. We are unable to discern from the record any steps whatsoever that could reasonably be construed as giving actual and/or implied notice of revocation to Stone Leasing.

As an appellate court we are required to give substantial deference to a trial court's findings. However, where as in this case the findings are inconsistent with the evidence, we must exercise our authority to reverse those findings and render the appropriate judgment. Konicki's conduct was inconsistent with his theory that he had revoked his acceptance of the equipment. Although the goods were non-conforming and he had a right to revoke under. R.C. 1302.66 (A)(1), such right may be waived where the buyer fails to effectively revoke his acceptance within a reasonable time. Konicki's failure to take adequate steps to notify the seller resulted in an ineffective revocation. He has thereby waived his right to revoke and impliedly accepted the goods despite their non-conformity. See R.C. 1302.64(A)(1).

Although not raised on appeal, we also note that the revocation-of-acceptance theory would be inapplicable to this matter in any event. R.C. 1302.66(A) requires that, as against the seller, the goods are non-conforming. In the present matter Konicki purchased the equipment via the lease agreement from Stone Leasing. The agreement conspicuously disclaims any implied warranties as to the equipment including warranties of merchantability and fitness for a particular purpose. Such disclaimers are recognized in Ohio as codified in R.C. 1302.29. Although express warranties may not be disclaimed in certain situations, no such express warranties are evidenced in the record. Consequently, the lessor/seller, Stone Leasing, did not warrant the goods would conform to anything.

The only warranties in effect were those made by the manufacturer and not the lessor/seller. In fact, Konicki did indeed recover $20,000 from said manufacturer on the warranty theory. Stone Leasing was in effect a middleman, wherein it provides a service to both manufacturer and buyer. It provides the resources to these parties in order to work out an agreeable financing arrangement so as to allow the buyer to buy and the manufacturer to sell. As such we find nothing unconscionable in recognizing the right of a financing lessor/seller to disclaim warranties to a product in which it had no active dealings in the manufacture, promotion or sale thereof. We would only point out that this is one of those situations where the consumer must proceed cautiously in his financial dealings.

Absent any warranty by the lessor/seller in this situation there is nothing to which the goods must conform, *ergo* there can be no non-conformity. Consequently, the buyer could not revoke acceptance as against this seller. His remedies must be obtained as against the manufacturer.

Based upon the aforementioned reasons we conclude that the trial court's finding that an effective revocation took place is against the weight of the evidence. There being no notice, there can be no effective revocation. We therefore find Stone Leasing's first assignment of error well-taken.

Stone Leasing argues under its second assignment of error that:

"The court's refusal to award judgment in favor of defendant-appellant, Stone Leasing Company, on its counterclaim against plaintiff-appellee for damages computed in accordance with Paragraph 12 of the equipment leases is against the manifest weight of the evidence and is contrary to law."

Having established Konicki accepted the goods despite their non-conformity to the manufacturer's warranty we must ascertain whether the seller/lessor is entitled to the contract price. Stone Leasing maintains Konicki was in default due to his non-payment of

monthly obligations under the lease. Konicki, on the other hand, argues that even absent an effective revocation of acceptance, Stone Leasing breached the contracts justifying his rescission. Konicki therefore claims he is entitled to a refund of his payments.

In its decision the trial court found that Stone Leasing failed to deliver the manufacturer's warranty to Konicki as required in paragraph nine of the lease agreement. The court also pointed out that Stone Leasing's failure to do so operated to the detriment of Konicki. On appeal Konicki argues this finding constituted a material breach of the contract thereby permitting him to rescind the contract. We disagree.

Paragraph nine of the lease agreement provides:

"The Lessor shall make available to the Lessee any manufacturer's warranty applicable to the equipment, but such warranty is not adopted by the Lessor. Except with respect to those items of maintenance and repair which are covered by any manufacturer's warranty, the Lessee shall pay the cost of all maintenance and repairs."

The evidence is confusing as to whether or not such warranty was provided to Konicki. The trial court concluded it was not. In any event we fail to see how Konicki was harmed as the manufacturer did attempt to make good on its warranty. The record reveals that the manufacturer tried unsuccessfully on several occasions to repair the equipment. After Salvaco refused to incur further expense, an action was commenced against it for breach of warranty, resulting in a $20,000 stipulated judgment. Under these circumstances we fail to see how Konicki was so prejudiced as to warrant rescission of the agreements.

The contracts still being in effect, we must agree with Stone Leasing that it is entitled to recover as provided therein. Paragraph twelve of the lease

agreements takes the form of a liquidated damages clause and provides:

"12. In the event of the cancellation of this lease and the repossession of the equipment by the Lessor under the provisions of paragraph 11 hereof, the damages resulting therefrom shall be computed by deducting all rental installments paid and the reasonable wholesale value of the equipment from the agreed full rental sum for the term of the lease. Said reasonable wholesale value shall be determined within a reasonable time after the repossession or surrender of the equipment or after breach of the within agreement, whichever is later in time. In addition to these gross damages, there may be added thereto as additional damages any moving charges necessary to return the equipment to the Lessor's place of business, any storage or other possessory lien charges required to be paid by the Lessor to other persons or organizations to obtain the physical release of the equipment, any reasonable legal fees incurred in obtaining physical possession of the equipment by the Lessor and any repairs, maintenance or other clean-up expenses incurred by the Lessor to get the equipment ready for wholesale valuation, it being at the absolute discretion of the Lessor to determine whether or not such expenses should be incurred in order to enhance the wholesale value of the equipment."

Konicki's failure to pay his monthly obligations under the agreements surely constitutes a default under the provisions of the leases. The parties have stipulated that there is a $14,042.53 balance due under the two leases. The uncontradicted evidence at trial shows the reasonable wholesale value of the equipment when returned was at most $1,500. Subtracting this valuation from the balance due leaves a figure of $12,542.53 as owing under the damage provision of the agreements.

In light of the evidence produced at

trial, this court agrees with Stone Leasing and finds its second assignment of error well-taken. Pursuant to App. R. 12(C) we hereby render judgment in favor of the appellant Stone Leasing on its counterclaim for $12,542.53.

It is the order of this court that the judgment in favor of Konicki, as against Stone Leasing, for $4,365 is reversed. The court also orders judgment be entered in favor of Stone Leasing against Kenneth W. Konicki for $12,542.53.

*Judgment reversed.*

WILSON and WEBER, JJ., concur.