876 F.2d 894
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
AGRISTOR LEASING-II, d/b/a Agristor Leasing, Plaintiff-Appellee,
v.
James M. WATSON and Dorothy B. Watson, Defendants-Appellants,
Cheryl W. Smith and the Watson Partnership, Former Defendants.
 No. 88-3321.
 United States Court of Appeals, Sixth Circuit.
 June 16, 1989.
 
 Before KENNEDY and WELLFORD, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants-appellants, James M. and Dorothy B. Watson (Watsons), appeal from the jury's verdict in favor of plaintiff-appellee AgriStor Leasing-II (AgriStor Leasing) in this diversity action. The Watsons contend that the District Court erred (1) in its instructions to the jury on agency law; (2) in its instructions on the issue of reasonable reliance; and (3) in directing a verdict against the Watsons on AgriStor Leasing's warranty disclaimers. We find no merit to these arguments; accordingly, we affirm.
 
 
 2
 In 1982, the Watsons and AgriStor Leasing entered into a long-term lease agreement on a "Slurrystore liquified manure-handling system." The agricultural equipment was manufactured by A.O. Smith Harvestore Products, Inc., a subsidiary of A.O. Smith Corporation. AgriStor Leasing is a Wisconsin general partnership in which A.O. Smith Corporation is one of the partners. AgriStor Leasing's purpose is to finance farmers' acquisitions of the manufacturer's products through leasing agreements; plaintiffs presented no evidence to show that the financing and manufacturing corporate entities are not separate and distinct.
 
 
 3
 In July 1981, the Watsons were approached by Jay Anglin, a salesman for Gateway, a Harvestore dealer. Anglin attempted to sell the Watsons a Slurrystore system, and was ultimately successful after taking them to seminars, and representing to them in writing that they would receive a $13,799.52 cash payment at the start of the agreement and that they would not be required to make any payments during the first year. Defendants contend that one of AgriStor Leasing's agents, Mutchler, told the Watsons what a great deal Anglin was offering, although Mutchler denied ever making such a statement.
 
 
 4
 The Watsons' lease transaction consisted of entering into a purchase agreement with the dealer, Gateway, submitting a lease application to AgriStor, and assigning the purchase agreement to AgriStor. Anglin filled out the lease agreement for the Watsons, although AgriStor did not authorize the procedure. Anglin and Gateway also were not authorized by AgriStor to explain lease terms other than the amount and length of payments. Upon approving the application in April 1982, AgriStor paid the purchase price of $69,442 to Gateway, took title to the equipment, and assigned all warranties in the equipment to Watsons.
 
 
 5
 Gateway paid the first eight monthly lease payments directly to AgriStor, and paid the Watsons the equivalent of the next four monthly payments. The Watsons used that money in turn to make three-and-one-half month's payments. Defendants made five additional payments starting in April 1984, but ceased making payments on August 1, 1984.
 
 
 6
 In 1985, plaintiff AgriStor Leasing brought suit against defendants for breach of the lease agreement. In March 1988, the jury awarded AgriStor $71,663.77 in damages for breach of the lease, and $1.00 in punitive damages against Mr. Watson for fraudulently representing his finances on the lease application. The jury found in favor of the defendant partnership consisting of Mr. Watson and his sister (Cheryl Watson Smith) on AgriStor's claims of unjust enrichment and breach of the lease.
 
 
 7
 The Watsons contended at trial, and continue to contend, that they ceased making payments to AgriStor because the equipment did not work as promised, and because they never received the $13,799 payment promised to them by Anglin. The Watsons, however, have never brought suit or a third-party complaint against the manufacturer or the dealer on the warranties. Their arguments are addressed below.
 
 
 8
 The Watsons' first argument is that Anglin was the apparent agent of AgriStor, but the District Court's jury instructions improperly emphasized express and implied authority, and failed to give a correct statement of apparent authority under Ohio agency law. The District Court's instruction on apparent authority reads as follows:
 
 
 9
 Apparent authority rises in the absence of expressed or implied authority where one person, by his acts, words, or conduct, causes another person to believe that authority has been given to an agent to act on his behalf. Such authority cannot be shown solely by the acts of the agent but must be based on acts, words, conduct or knowledge of the employer. The employer is responsible for such appearance of authority as was caused or permitted by the employer himself.
 
 
 10
 JA 350. The Watsons argue that the District Court should have included the following sentence in its agency instructions: "You may also determine Jay Anglin's authority from the manner in which he acted with the consent, or at least without the disapproval of AgriStor Leasing II." Defendants' Brief at 16.
 
 
 11
 Defendants have waived their right to review of the court's charge on this issue. Rule 51 of the Federal Rules of Civil Procedure states in relevant part:
 
 
 12
 No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.
 
 
 13
 Rule 51, Fed.R.Civ.P. Defendants did not object to the court's instruction, and raise it for the first time on appeal to this Court. We will only "review errors not preserved for appeal in those exceptional cases where the errors are so obvious and prejudicial as to affect the fairness of judicial proceedings." Gomez v. Great Lakes Steel Div., Nat'l Steel Corp., 803 F.2d 250, 256 (6th Cir.1986). In this case, the District Court has properly stated Ohio agency law, see Cascioli v. Central Mut. Ins. Co., 4 Ohio St.3d 179, 181 (1983) (quoting Miller v. Wick Bldg. Co., 154 Ohio St. 93 (1950)), and has in fact included defendants' proposed sentence in the instruction. The term "at least without the disapproval of" is incorporated in the terms "knowledge" and "caused or permitted by the employer."
 
 
 14
 We lastly note defendants' misplaced reliance on AgriStor Leasing v. Farrow, 826 F.2d 732 (8th Cir.1987). The Eighth Circuit held in that case that the District Court's grant of summary judgment was inappropriate on the issue of apparent agency because there was a genuine issue of material fact. See Rule 56, Fed.R.Civ.P. In the instant case, the issue of apparent authority was not decided on summary judgment; rather, it was argued to, and rejected by, the jury.
 
 
 15
 Defendants next argue that the District Court erroneously instructed the jury on the issue of reasonable reliance on Anglin's representations as the alleged agent of AgriStor. They posit that "the Court's charge said, in essence, 'if the fraud could have been discovered by reading the agreements, reliance was unreasonable.' " Defendants' Brief at 1. Defendants misstate the court's charge, which actually stated:
 
 
 16
 The Watsons must further prove that the representations were made with the intent to mislead them into relying on them and that they justifiably relied upon the representations. Now in determining whether or not the Watsons were justified in relying upon the alleged representations, you should consider all the circumstances, including their ability to have discovered the falsity of the representations by reading the lease or other documents which they signed.
 
 
 17
 JA 352 (emphasis added). See also JA 355. Under Ohio law, reasonable reliance on a fraudulent inducement requires
 
 
 18
 "consider[ing] the various circumstances involved, such as the nature of the transaction, the form and materiality of the representation, the relationship of the parties, the respective intelligence, experience, age, and mental and physical condition of the parties, and their respective knowledge and means of knowledge."
 
 
 19
 Finomore v. Epstein, 18 Ohio App.3d 88, 90 (1984) (quoting Feliciano v. Moore, 64 Ohio App.2d 236, 241 (1979), which in turn quotes 37 Am.Jur.2d, Sec. 248). We find no error in the court's charge.
 
 
 20
 Defendants' final argument is that the District Court improperly directed a verdict against the Watsons on AgriStor Leasing's warranty disclaimers. A federal court sitting in diversity is bound to apply the standard for a directed verdict of the state whose substantive law governs the action; in this case, Ohio. See Arms v. State Farm Fire & Casualty Co., 731 F.2d 1245, 1248 (6th Cir.1984). Under the Ohio rules of civil procedure,
 
 
 21
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
 
 
 22
 Ohio R.Civ.P. 50(A)(4); Waller v. Mayfield, 37 Ohio St.3d 118, 120-21 (1988) (quoting Rule 50(A)(4)).
 
 
 23
 The District Court met the above standard. AgriStor explicitly disclaimed any warranties, express or implied, or representations about the equipment in the lease agreement. AgriStor further assigned all warranties to the Watsons. The lease agreement states in bold face type:
 
 
 24
 4. No Warranties by Lessor. LESSEE HAS SELECTED THE EQUIPMENT AND IS SATISFIED THAT THE EQUIPMENT IS SUITABLE FOR LESSEE'S PURPOSES. LESSOR HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION OR WARRANTY, EITHER EXPRESS OR IMPLIED, AS TO THE EQUIPMENT, AND EXPRESSLY DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE. LESSOR IS NOT RESPONSIBLE OR LIABLE (INCLUDING, WITHOUT LIMITATION, UNDER STRICT OR ABSOLUTE LIABILITY IN TORT OR BY STATUTE) TO LESSEE OR ANY OTHER PERSON FOR (a) ANY LOSS OR DAMAGE CAUSED BY OR ARISING IN CONNECTION WITH THE EQUIPMENT, (b) THE USE, OPERATION OR PERFORMANCE OF THE EQUIPMENT, (c) DELAY IN OBTAINING OR INSTALLING THE EQUIPMENT OR (d) DELIVERY, INSTALLATION, OPERATION, SERVICING, MAINTENANCE, REPAIR OR REPLACEMENT OF THE EQUIPMENT.
 
 
 25
 IN SIGNING THIS LEASE, LESSEE HAS RELIED ONLY UPON THE TERMS CONTAINED HEREIN AND NOT UPON ANY STATEMENTS OR PROMISES MADE BY ANY OTHER PERSON. IF THE EQUIPMENT IS NOT PROPERLY INSTALLED OR DOES NOT OPERATE AS WARRANTED BY THE SUPPLIER OR IS OTHERWISE UNSATISFACTORY FOR LESSEE, LESSEE AGREES THAT IT SHALL CONTINUE TO PAY ALL RENT DUE UNDER THIS LEASE AND LESSEE'S EXCLUSIVE REMEDY SHALL BE TO MAKE A CLAIM AGAINST THE SUPPLIER NAMED IN THE PURCHASE ORDER FOR THE EQUIPMENT. Lessor authorizes Lessee, during the term of this Lease, to assert all of Lessor's rights under any warranty with respect to the Equipment, at Lessee's expense.
 
 
 26
 JA 52.
 
 
 27
 The Ohio courts have held that,
 
 
 28
 [I]t is not unconscionable for the lessor-vendee to disclaim warranties to the equipment, in which it had no active dealings in the selection or manufacture thereof, so long as the lessor-vendee effectively assigns to the lessee all warranties, expressed or implied, in the leased equipment.
 
 
 29
 Irving Leasing Corp. v. M & H Tire Co., 16 Ohio App.3d 191 (1984) (syllabus p 2). See Konicki v. Salvaco, Inc., 16 Ohio App.3d 40, 41 (1984) (syllabus p 2) ("A financing lessor which acts as a middleman for the manufacturer and buyer may disclaim warranties to a product in which it had no active dealings in the manufacture, promotion or sale thereof. In such a case, the buyer's remedies for nonconformity of the goods to the manufacturer's warranty must be obtained against the manufacturer."). Conspicuous disclaimers of implied warranties are valid under Ohio Revised Code Sec. 1302.29 (UCC 2-316), and are not unconscionable. Konicki, 16 Ohio App.3d at 45.
 
 
 30
 We find absolutely no evidence in the record to indicate that the manufacturing and financing entities were not maintained separate and distinct. Defendants' remedies for defective equipment are thus against the manufacturer and dealer, rather than against AgriStor Leasing. See Konicki, 16 Ohio App.3d at 45. Cf. AgriStor Leasing v. Saylor, 803 F.2d 1401, 1403 (6th Cir.1986) (lessees filed third-party complaint against the salesman, dealer, and manufacturer after confessing judgment on AgriStor Leasing's claim).
 
 
 31
 For the reasons stated above, the judgment of the District Court is AFFIRMED.