DECISION AND JUDGMENT ENTRY
{¶ 1} Trimat, Inc., appeals the Gallipolis Municipal Court's judgment awarding Hooten Equipment Co. monetary damages for breach of contract. The court concluded that Trimat failed to pay Hooten for goods that Trimat accepted. Trimat argues that it effectively rejected the goods thus, the court incorrectly found that it accepted them. However, the record contains competent and credible evidence that Trimat neglected to read the invoice upon delivery, which would have revealed that the goods were nonconforming. By installing the goods they accepted them, as R.C. 1302.64 contemplates. Moreover, Trimat failed to carry its burden of proving that it effectively rejected the goods. Therefore, we affirm the trial court's judgment.
 {¶ 2} Hooten is an equipment company that sells hardware and fixtures for installation in various building projects. Trimat is a construction company that ordered a range hood system for a building project. Trimat requested a range hood with an exhaust fan rated for 2400 cubic feet per minute. Hooten subsequently delivered a range hood with an exhaust fan rated at 3025 cubic feet per minute. The invoice delivered with the range hood clearly indicated that the range hood had an exhaust fan rated at 3025 feet per minute, and not the 2400 cubic feet per minute that Trimat had requested.
 {¶ 3} Sometime after a third party installed the range hood, Trimat discovered that the range hood failed to meet Ohio Industrial Department of Commerce, Division of Industrial Compliance guidelines because the larger capacity fan did not allow for sufficient duct work. Since the range hood failed to meet state requirements, Trimat was unable to use it. Trimat subsequently telephoned Hooten to advise it that the range hood failed to meet state guidelines and also failed to meet the project specifications. Trimat general manager Maurice Toler sent a letter dated January 11, 2002 to Hooten, informing Hooten that the range hood failed the state inspection. The letter also advised Hooten that Trimat would not pay for the range hood until it was usable.
 {¶ 4} In August of 2002, Hooten filed a complaint against Trimat for breach of contract. After a bench trial, the court awarded Hooten damages for Trimat's breach of contract. The trial court found that when the range hood system was delivered, the invoice indicated that the exhaust fan did not conform to the purchase request. Trimat, however, took delivery of the range hood system and installed it in the building. The court determined that Trimat did not effectively reject the nonconforming goods. The court thus determined that Trimat accepted the range hood system.
 {¶ 5} Trimat timely appealed the trial court's judgment and assigns the following error: "The trial court erred as a matter of law and abused its discretion by holding that the appellant had breached its contract with the appellee and had accepted the nonconforming goods."
 {¶ 6} In its sole assignment of error, Trimat asserts that the trial court's judgment is against the manifest weight of the evidence. Trimat complains that the court's finding that it accepted nonconforming goods by failing to seasonably reject those goods is not supported by competent, credible evidence. Trimat contends that evidence exists that it orally advised Hooten, prior to the January 2002 letter, that the range hood did not meet specifications.
 {¶ 7} An appellate court will not reverse a trial court's judgment so long as it is supported by any competent, credible evidence going to all of the essential elements of the case.Sec. Pacific Natl. Bank v. Roulette (1986), 24 Ohio St.3d 17,20, 492 N.E.2d 438; C.E. Morris Constr. Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 280, 376 N.E.2d 578. Under this highly deferential standard of review, a reviewing court does not decide whether it would have come to the same conclusion as the trial court. Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate factual conclusions. We are guided by the presumption that the trial court's factual findings are correct because of the knowledge that the trial judge "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 79, 461 N.E.2d 1273. When a trial court's decision involving R.C. 1302.01 et seq. is based on competent, credible evidence, a reviewing court will not disturb it on appeal.George v. Fannin (1990), 67 Ohio App.3d 703, 709, citingKonicki v. Salvaco, Inc. (1984), 16 Ohio App.3d 40, 42.
 {¶ 8} Here, Trimat asserts that there is no competent and credible evidence to support the finding that it accepted the goods. Under R.C. 1302.64(A), acceptance occurs when the buyer: "(1) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or (2) fails to make an effective rejection as provided in division (A) of section 1302.61 of the Revised Code, but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or (3) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him."
 {¶ 9} Thus, under R.C. 1302.64, "`delivery of goods does not in and of itself constitute acceptance.'" Trustcorp Bank of Ohiov. Cox (Sept. 13, 1991), Lucas App. No. L-90-231, quotingCapitol Dodge Sales, Inc. v. Northern Concrete Pipe, Inc.
(1983), 131 Mich. App. 149, 346 N.W.2d 535. "Rather, `[a]cceptance' is a term of art which must be distinguished from a variety of other acts which the buyer might commit." Id., quoting White Summers, Handbook of the Law Under the Commercial Code (2 Ed. 1980) 296, Section 8-2. Thus, acceptance of goods is only tangentially related to possession and, normally, the buyer will have had possession of the goods some time before he can accept them. Id. That is, acceptance does not occur unless (1) the buyer is provided with a reasonable time to inspect the goods and accept them despite any nonconformity, (2) the buyer fails to effectuate a seasonable rejection of the goods for their nonconformance under R.C. 1302.60(A) and R.C. 1302.61(A), or (3) the buyer does any act which is inconsistent with the seller's ownership. Id. (citing Anderson, Uniform Commercial Code (3 Ed. 1983) 103, Section 2-606:17); see, also, F.C. Machine Tool Design, Inc. v. Custom Design Technologies, Inc. (Dec. 27, 2001), Stark App. No. 2001CA19.
 {¶ 10} In this case, Trimat asserts that it did not accept the goods because it effectively rejected the goods. R.C. 1302.61
governs rejection and states that for a rejection to be effective, the "[r]ejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." If the buyer does not reject the goods in a timely fashion, it is considered to have accepted them. See R.C. 1302.64(A)(2). The period of time in which the buyer must act is measured by the buyer's right to a reasonable opportunity to inspect the goods. R.C. 1302.64;Alliance Wall Corp. v. Ampat Midwest Corp. (1984),17 Ohio App.3d 59, 63, 477 N.E.2d 1206 (footnotes omitted.); see, also,Tlg Electronics, Inc. v. Newcome Corp. (Mar. 5, 2002), Franklin App. No. 01AP-821.
 {¶ 11} There is evidence in the record to support the trial court's finding that Trimat did not effectively reject the goods. Thus, under R.C. 1302.64, Trimat accepted the goods. Trimat had a reasonable opportunity to inspect the goods after their delivery but Trimat did not reject them in a timely manner. Trimat merely had to read the invoice to realize that the goods identified there did not match the specifications. See Jones v. Davenport
(Jan. 26, 2001), Montgomery App. No. 18162 (concluding that buyer did not timely reject the goods when the nonconformity was obvious upon delivery). Moreover, Trimat not only retained the goods in its possession, it installed the hood before notifying Hooten of any nonconformity. Finally, the record is not entirely clear regarding the date that Trimat received the hood and when it first gave Hooten notice of the hood's nonconformity. We believe that Trimat bore the burden of proving that it provided Hooten with timely notice of the nonconformity. The evidence as to when the goods were delivered or when Trimat orally notified Hooten of the nonconformity is scarce. Nothing in the trial court record shows when Hooten delivered the range hood. Hooten claims, and the trial court found, that the hood was delivered on January 30, 2001. However, there is no testimony or documentary evidence to establish that the range hood was delivered on that date.
 {¶ 12} Some evidence exists that the range hood was delivered after December of 2000. Hooten vice-president Paul Manahan testified that he received a letter from Captive Air Systems, which supplied Hooten with the range hood, stating that the range hood was delivered in December of 2000 (presumably, Captive Air delivered the range hood to Hooten in December of 2000; then, Hooten subsequently delivered the range hood to Trimat). Manahan stated that after the range hood was delivered, he spoke with Toler at least three times on the telephone. Manahan does not state, however, when these phone conversations occurred. Further, Toler claimed that he told Manahan that the state rejected the installation. However, Toler did not specify when this conversation occurred. Without evidence as to the time-line of Trimat's notification that the range hood did not meet its specifications, we will not second guess the court on the issue of whether Trimat seasonably rejected the goods. Trimat failed in its burden of proof under R.C. 1302.64. Because Trimat did not meet its burden of proof on this issue, the trial court was entitled to find that Trimat did not timely notify Hooten of the nonconformity. The determination of a reasonable time and the adequacy of notice of rejection to the seller are questions for the trier of fact. Kabco Equip. Specialists v. Budgetel, Inc.
(1981), 2 Ohio App.3d 58, 61, 440 N.E.2d 611; see, also, E.N.Beard Hardwood Lumber Co. v. Nussbaum (Mar. 20, 1991), Wayne App. No. 2596. The trial court found that Trimat's notice was not timely and we must, therefore, defer to this finding. As a result of Trimat's failure in this regard, the trial court properly concluded that Trimat accepted the goods under R.C. 1302.64.
 {¶ 13} Consequently, we overrule Trimat's sole assignment of error and affirm the trial court's judgment.
Judgment affirmed.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.