**BUILDER'S KITCHENS OF STARK COUNTY, INC., Appellant,**

v.

**SIBEL, Appellee.**

[Cite as *Builder's Kitchens of Stark Cty., Inc. v. Sibel,* 189 Ohio App.3d 41, 2010-Ohio-890.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2009CA00065.

Decided March 8, 2010.

Nathan A. Ray, for appellant.

Rex W. Miller, for appellee.

DELANEY, Judge.

{¶ 1} Plaintiff-appellant, Builder's Kitchens of Stark County, Inc., appeals the February 28, 2009 judgment entry of the Stark County Court of Common Pleas adopting the January 15, 2009 decision of the magistrate. Defendant-appellee is Kate Sibel.

## STATEMENT OF THE FACTS AND THE CASE

{¶ 2} On January 11, 2008, appellant filed a complaint for account against appellee, moving for judgment in the amount of $27,413.19 based upon breach of contract and quantum meruit. Appellee counterclaimed against appellant, alleging breach of the same contract and requesting judgment for $8,239.85.

{¶ 3} The trial court assigned the matter to a magistrate, and a nonjury trial was held on November 6, 2008. The following evidence was adduced at trial.

{¶ 4} Appellant, located in Canton, Ohio, is in the business of designing and installing kitchen cabinetry, bath cabinetry, desks, and entertainment centers. In late 2005, appellee sought the services of appellant for the purpose of renovating the cabinetry in her home located in Canton, Ohio. Appellee's existing cabinetry was constructed by Wood–Mode, and appellee wanted the new cabinetry to match in color and style what was already in place. Appellee chose to contract with appellant because appellant was a local Wood–Mode dealer.

{¶ 5} David Horst, appellant's owner and president, met with appellee several times in the spring of 2006 to discuss the remodeling project. As a result of the meetings, appellant prepared a proposal dated June 26, 2006, detailing the scope of the work to be done in appellee's home. The parties do not dispute that they entered into an oral contract for the completion of the work contained in the June 26, 2006 proposal.

{¶ 6} Specific to this appeal, the June 26, 2006 proposal stated, "Install new kitchen cabinets as per layout to match existing cabinets." In the dinette area, appellant was to install a Wood–Mode bar/hutch as per the layout designed by appellee, Horst, and a representative from Wood–Mode. In Plaintiff's Exhibit 4, a representative from Wood–Mode drew up a plan for the construction of the hutch as to its detailing, such as the style of door and drawer fronts. Horst testified that he showed appellee the drawing of the style of the hutch and she gave her approval.

{¶ 7} On June 29, 2006, Horst issued an itemized proposal to appellant. The total cost of the project was $96,264.43. The hutch cabinetry cost $21,467.76. Appellee made an initial deposit of $20,000 to begin the project.

{¶ 8} Horst subcontracted with Brian Eick to perform the installation and construction work in appellee's home, as set forth in the June 26, 2006 proposal. Eick, Horst, and appellee met at appellee's home and walked through the home to discuss the work that was to be completed pursuant to the June 26, 2006 proposal. Appellant paid Eick $20,000 to work on the project. Eick testified that at the time of the hearing, all of the work for appellant, but for a few small items, was complete; Eick had billed appellant for $20,000; and appellant had paid the bill.

{¶ 9} Appellant secured and delivered the cabinets for installation. Appellee was not present for the installation of the cabinets because she was out of the country. When appellee returned, she inspected the installed cabinetry in her home. Appellee voiced her complaints to Eick that the hutch did not match the existing cabinetry in color or style. Eick testified that he was working under appellant's contract when appellee told him her complaints in regards to the hutch.

{¶ 10} Appellee testified at trial that the hutch had several problems. It did not match the drawing made by Wood–Mode's representative in that the installed drawer fronts were flat panels, and appellee had specified raised panels. The specifications called for bead board in the interior of the hutch, and the installed hutch did not have the specified bead board. The color of the hutch did not match the color of the existing cabinetry. Eick testified that Horst and a Wood–Mode representative were present when the hutch was installed, and they knew that the hutch did not match the existing cabinets, but Horst told Eick to go ahead and install it. Horst testified that he did not have any knowledge prior to

appellee's counterclaim that the hutch did not conform to appellee's color specifications. However, Horst stated that he learned from Eick about the issues with the door fronts and bead board; appellant supplied new door fronts and bead board for the hutch to be installed by Eick. Eick was compensated by appellant for his work under the contract. Appellee also asked Eick to complete additional work after the installation of the cabinets and compensated him directly.

{¶ 11} In order to color-match the hutch, Eick testified that he would have to remove the hutch, take it to a finish shop, have it refinished, bring it back, and reinstall it. He estimated that it would cost $1,500 to remove the hutch and $3,000 to reinstall the hutch. At the time of trial, however, Eick testified that he had not been asked to refinish the hutch, and he could not give an estimate as to how much it would cost to refinish the hutch so that it matched the existing cabinets. Eick conjectured that it would cost less to refinish the hutch than to purchase and install a new conforming hutch. Eick stated that if the hutch were to be replaced with a new hutch with the correct color and style specifications, the project would cost $28,500.

{¶ 12} In total, appellee paid appellant $70,000 (including the $20,000 deposit). At trial, the parties stipulated that appellant did not complete work in the amount of $4,704.00. Appellant did do additional work in the amount of $5,852.76. The total cost of the project then was $97,413.19. The unpaid balance of the contract was $27,413.19.

{¶ 13} In the January 15, 2009 magistrate's decision, the magistrate determined that there was a breach of the oral contract entered into by the parties as to the hutch. The magistrate found that appellant had breached the oral contract by knowingly providing a nonconforming product, as the hutch did not match the diagram provided by appellant based upon the existing main kitchen cabinetry as to either design or color. The magistrate found, based upon the findings of fact and conclusions of law, that appellee was entitled to offset the balance due on the final price of the project of $27,413.19 by the cost of the nonconforming hutch in the amount of $21,467.76.

{¶ 14} The magistrate granted judgment in favor of appellant in the amount of $5,945.43, with interest at the statutory rate from May 4, 2007.

{¶ 15} Appellant filed objections to the magistrate's decision. Upon due consideration of the objections and response, the trial court adopted the magistrate's decision on February 28, 2009.

{¶ 16} It is from this decision that appellant now appeals.

## ASSIGNMENTS OF ERROR

{¶ 17} Appellant raises two assignments of error:

{¶ 18} "I. Is an individual unjustly enriched when she is allowed to keep a personal item, without having to pay for it, where the only complaint is the color?

{¶ 19} "II. Can a buyer use as a defense non-conformity of a personal item when the buyer has failed to provide timely notice to the seller?"

## I and II

{¶ 20} For ease of analysis, we will discuss appellant's assignments of error together. Appellant argues that the trial court erred in the judgment of this case because the amount of the damages awarded to appellant was incorrect, and appellant did not have notice of the nonconforming hutch.

{¶ 21} An appellate court will not reverse a trial court's judgment so long as it is supported by any competent, credible evidence going to all of the essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. "[A] reviewing court does not decide whether it would have come to the same conclusion as the trial court. Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate factual conclusions." *Hooten Equip. Co. v. Trimat, Inc.*, Gallia App. No. 03CA16, 2004-Ohio-1128, 2004 WL 444134, ¶ 7. We are to defer to the findings of the trier of fact because in a bench trial, the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and use to these observations in weighing the credibility of the testimony. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. When a trial court's decision involving R.C. 1302.01 et seq. is based on competent, credible evidence, a reviewing court will not disturb it on appeal. *George v. Fannin* (1990), 67 Ohio App.3d 703, 709, 588 N.E.2d 195, citing *Konicki v. Salvaco, Inc.* (1984), 16 Ohio App.3d 40, 42, 16 OBR 43, 474 N.E.2d 347.

{¶ 22} As an initial matter, this court finds that this transaction falls under R.C. 1302.01 et seq., which regulates the sale of goods. The Ohio General Assembly codified the U.C.C. on July 1, 2001, in R.C. Chapter 1302. Ohio's adoption of the U.C.C. provides multiple remedies for buyers of alleged nonconforming goods, including the purchase and installation of custom-made goods. *Varavvas v. Mullet Cabinets, Inc.*, 185 Ohio App.3d 321, 2009-Ohio-6962, 923 N.E.2d 1221, ¶ 45.

{¶ 23} Appellant raises its assignments of error under R.C. 1302.65 and 1302.88, which concern the buyer's acceptance of nonconforming goods and the measurement of damages based on the buyer's acceptance of the nonconforming goods. Appellant does not argue that the trial court erred in finding that appellant breached the contract as to the hutch or the trial court erred in finding that appellee accepted the nonconforming hutch.

{¶ 24} R.C. 1302.88 establishes the remedies available to the buyer after the goods have been accepted and the time for revocation of acceptance has passed. It states:

{¶ 25} "(A) Where the buyer has accepted goods and given notification as provided in division (C) of section 1302.65 of the Revised Code, he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

{¶ 26} "(B) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

{¶ 27} "(C) In a proper case any incidental and consequential damages under section 1302.89 of the Revised Code may also be recovered."

{¶ 28} A buyer's failure to notify the seller of the nonconformity operates to bar her remedies under the statute, as clarified by R.C. 1302.65(C). R.C. 1302.65 states:

{¶ 29} "(A) The buyer must pay at the contract rate for any goods accepted.

{¶ 30} "(B) Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a non-conformity cannot be revoked because of it unless the acceptance was on the reasonable assumption that the non-conformity would be seasonably cured but acceptance does not of itself impair any other remedy provided by sections 1302.01 to 1302.98, inclusive, of the Revised Code for non-conformity.

{¶ 31} "(C) Where a tender has been accepted:

{¶ 32} "(1) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; and

{¶ 33} "(2) if the claim is one for infringement or the like pursuant to division (C) of section 1302.25 of the Revised Code and the buyer is sued as a result of such a breach he must so notify the seller within a reasonable time after he receives notice of the litigation or be barred from any remedy over for liability established by the litigation.

{¶ 34} "(D) The burden is on the buyer to establish any breach with respect to the goods accepted."

{¶ 35} Appellant argues in its second assignment of error that the trial court erred in finding that appellee gave appellant notification of the breach of contract based on the nonconforming hutch. We disagree.

{¶ 36} The magistrate determined that appellant had contracted with Brian Eick as a subcontractor to perform the installation and construction work on appellee's home as set forth in the June 26, 2006 proposal. Appellee was not at home when the cabinets were installed. The magistrate found that "[w]hen Ms. Sibel returned and inspected the cabinets, including the hutch, she voiced her complaints to Mr. Eick, who was then Plaintiff's representative on the job site. The contract provided that the new main kitchen cabinets, including the hutch, would match the existing main kitchen cabinets."

{¶ 37} Upon review of the record, we find that there was competent and credible evidence to support the magistrate's findings of fact and conclusions of law that appellee gave appellant notification of the breach. The evidence demonstrates that appellee gave notification to Eick that the hutch did not conform to the specifications of the June 26, 2006 proposal and oral contract. Appellee testified that when she returned to the country, she inspected the installed hutch and told Eick that it did not match the existing cabinetry. We further find that Eick was appellant's representative at the time of the notification. The evidence shows that at the time appellee told him that the hutch did not meet the specifications, Eick was working under appellant's contract. It was after the cabinetry was installed that appellee began paying Eick directly for additional work, including special work that was not the subject of the contract.

{¶ 38} Accordingly, appellant's second assignment of error is overruled.

 {¶ 39} The next issue is whether the trial court erred in its measure of damages. The magistrate found that the balance remaining on the contract was $27,413.19. The magistrate next stated that the "cost of the nonconforming hutch" was $21,467.76. The magistrate determined that appellee was permitted to offset the balance of the contract against the cost of the nonconforming hutch, resulting in a damages award in favor of appellant in the amount of $5,945.43.

{¶ 40} Appellant argues in its first assignment of error that the trial court used the incorrect measure of damages, resulting in an unjust enrichment for appellee. As stated above, there is no argument before this court that the hutch in question was a nonconforming good and appellee accepted the nonconforming good. Thus, we find R.C. 1302.88(A) to be applicable to the present case. It states, "Where the buyer has accepted goods and given notification as provided in division (C) of section 1302.65 of the Revised Code, he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable."

{¶ 41} Under this standard, we find that there was competent and credible evidence to support the trial court's determination of damages to permit appellee

to offset the contract value of the hutch to the remaining balance of the contract. Appellee testified that the appearance of the new cabinetry in relation to the existing cabinetry was an integral part of the contract, because appellee chose to work with appellant because it was a dealer of Wood–Mode cabinets. Evidence was presented that this term of the contract was not met in relation to the hutch because not only was the color of the installed hutch in breach of the contract, but the door fronts, drawer fronts, and bead board also did not conform to the specifications. Appellant impaired appellee's ability to reject the nonconforming cabinets at the outset because it proceeded with installation when appellee was not present.

{¶ 42} The uncontroverted evidence before the magistrate in regards to damages was that appellee contracted with appellant to purchase the hutch for $21,467.76. The purchase and installation of a new and conforming hutch would cost $28,500. Based on the foregoing, we find that competent and credible evidence supports the trial court's determination of damages under the standard set forth in R.C. 1302.88(A) as to the buyer's remedy for nonconformity of tender. We also note that appellant did not seek to recover the nonconforming hutch upon appellee's failure to pay, which would have returned the parties to their presale positions; rather, appellant sought recovery of the full purchase price without regard to damages flowing from the nonconformity.

{¶ 43} Appellant's first assignment of error is overruled.

{¶ 44} The judgment of the Stark County Court of Common Pleas is affirmed.

Judgment affirmed.

WISE, P.J., and EDWARDS, J., concur.