KABCO EQUIPMENT SPECIALISTS, APPELLANT, *v.* BUDGETEL, INC., APPELLEE.

(No. 81AP-40—Decided May 19, 1981.)

---

[11] The record indicates that the truck had a salvage value of approximately $1,000 before repairs were initiated.

*Messrs. Gottfried & Palmer, Mr. Gary J. Gottfried* and *Mr. Richard D. Palmer,* for appellant.

*Messrs. Bricker & Eckler, Mr. John F. Birath* and *Mr. Charles H. Walker,* for appellee.

McCORMAC, J. Plaintiff-appellant, Kabco Equipment Specialists, filed a complaint in Franklin County Municipal Court alleging that it had sold, delivered and installed a commercial washer for defendant-appellee, Budgetel, Inc., for which Budgetel had failed to pay the agreed price of $2,313.79. Budgetel counterclaimed, the subject of which had been the basis of an action filed on October 19, 1979 in the Court of Common Pleas of Franklin County which was subsequently dismissed, seeking recovery of $1,350 paid for another commercial washer which had been installed by Kabco and never made operable, $400 alleged to be due Budgetel on two trade-in washers, and consequential expenses caused by defects in the machine.

The trial court rendered judgment for Kabco on the complaint for the amount sought and judgment for Budgetel on the counterclaim for $2,150, consisting of $1,350 paid for the washer, $400 for the two trade-in washing machines, and $400 consequential damages.

The trial court found that Kabco failed to supply Budgetel with an operable washing machine and further misrepresented that the machine was never used when, in fact, it was.

Kabco has appealed, asserting the following assignments of error:

1. "The court erred in finding that plaintiff owes defendant for the 'trade in' of any washing machines from defendant in that plaintiff nor its agent entered into a contract for the purchase of these machines."

2. "The court erred in finding a breach of contract by plaintiff sufficient to support rejection of the Uni-Mac 202 or the revocation of its acceptance by defendant, in that defendant failed to give plaintiff notice of the defects and an adequate opportunity to cure those defects."

3. "The court erred in finding plaintiff liable to defendant for damages as a result of its breach when such were not consequential and the amount is purely speculative."

The judgment on Kabco's complaint is not contested. Only the judgment on the counterclaim is in issue.

Kabco admitted that it sold the commercial washer, which was the subject of the counterclaim, to Budgetel for $1,350 and represented it as an older machine but that it had never been used. Kabco also admitted that it had guaranteed the machine. Kabco stated that the machine was purchased from a nursing home for $1,000 and was sold to Budgetel for $1,350, and that the nursing home had represented to it that the washing machine had never been used. Kabco also stated that it believed the nursing home's statement. Other testimony established to the trial court's satisfaction that the washing machine had, in fact, been used and also had substantial defects when installed.

After installation on July 22, 1979, there is no question that the washing machine leaked and needed repairs. An independent contractor hired by Kabco to install the machine worked on the machine six or eight times within the next two to three weeks in an attempt to resolve the recurrent problems of leakage from the machine. While the repairman was actually an independent contractor, Budgetel did not know his status. There is a dispute in the evidence as to whether the washing machine was ever made operable. Budgetel's witnesses testified unequivocally that the machine continued to leak and to cause problems and that, despite repeated notices to Kabco and returns of the repairman, the machine never worked properly, necessitating discontinuance of its use around September 15, 1979, and the purchase of

another washing machine. Kabco's president and the repairman testified that they felt the machine had been repaired satisfactorily. The trial court was entitled to believe Budgetel's witnesses and to find that the washing machine was never made sufficiently operable to comply with the terms of the contract of sale.

The parties agreed that two Ametek washing machines, which were replaced by the commercial washer, were sold for $400 at the time the new machine was installed. Both Kabco's president and the repairman testified that the repairman had individually purchased them, not Kabco. The repairman testifed that he had the machines and had not paid for them. The managing partner of Budgetel testified that he never talked to the repairman, did not know his status, and that his agreement was with Kabco in regard to receiving $400 for the trade-in machines. The credibility of the witnesses is for the trial court and it was entitled to believe Budgetel's witness.

Budgetel alleged consequential damages and there was testimony that the washing machine leaked onto the carpet in the motel office, necessitating shampooing of the carpet. There was no testimony as to the cost of cleaning the carpet. Budgetel also claimed that it was necessary to pay overtime wages to employees during a period of about two months because of problems with the washing machine. There was no record of the extent or amount of overtime wages.

Turning to the assignments of error, Kabco first alleges error in the trial court's finding that Budgetel was entitled to $400 for the trade-in of the two replaced washing machines. As previously noted, that determination was factual. There was conflicting evidence. The managing partner of Budgetel testified that his agreement for the purchase of the machines for $400 was with Kabco.

Kabco's first assignment of error is overruled.

Kabco secondly contends that the trial court erred in finding a breach of contract by Kabco sufficient to support rejection of the commercial washer or revocation of acceptance in that Budgetel failed to give Kabco notice of the defects and an adequate opportunity to cure those defects.

Kabco sold Budgetel a commercial washer which was alleged to be five or six years old but never used. In fact, the washer had been used previously. Kabco admitted that it guaranteed Budgetel a workable washing machine. According to defense testimony, despite repeated notice to Kabco and attempts to cure the defects, Kabco was never able to make the machine operate properly. Approximately three months after the purchase, Budgetel filed suit demanding return of the purchase price of the machine. Based upon Budgetel's evidence, the trial court properly found that Budgetel never accepted the washer. R.C. 1302.64 provides, in relevant part, as follows:

"(A) Acceptance of goods occurs when the buyer:

"(1) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or

"(2) fails to make an effective rejection as provided in division (A) of section 1302.61 of the Revised Code, but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; * * *"

Budgetel never accepted the washing machine, if their evidence is to be believed. The washing machine did not conform to the representations of the seller, nor was the seller ever able to perform the guarantee. The buyer never indicated that he would retain the goods in spite of the non-conformity or that it was satisfied with the goods. According to the defense evidence, Budgetel apparently resigned itself to the fact that the washer could not be made to perform satisfactorily, purchased another washer and, within a

reasonable time thereafter, gave effective notice of non-acceptance or rejection of the goods by filing suit for return of the purchase price. A seller does not have unlimited time to cure non-conformities, nor does a buyer have to keep complaining forever. See *Jorgensen* v. *Pressnall* (1976), 274 Ore. 285, 291, 545 P. 2d 1382. At least debatably sufficient time was allowed the seller to cure defects and the buyer's action in filing suit to recover the purchase price constituted an effective notice of non-acceptance or revocation of acceptance. Notice need not be in any particular form and may be implied from conduct. See *Fenton* v. *Contemporary Development Co.* (1974), 12 Wash. App. 345, 348, 529 P. 2d 883. The determination of a reasonable time and the adequacy of notice to the seller are ordinarily questions of fact. *Sauers* v. *Tibbs* (1977), 48 Ill. App. 3d 805, 811, 363 N.E. 2d 444. The facts were found by the trial court against Kabco.

Kabco's second assignment of error is overruled.

Kabco's third assignment of error is that the trial court erred in finding Kabco liable to Budgetel for consequential damages as the damages were not consequential and the amount was speculative.

R.C. 1302.89(A) permits recovery of incidental damages from the seller's breach, including reasonable expenses incident to the breach. Consequential damages may include any loss resulting from the general particular requirements and needs of which the seller, at the time of contracting, had reason to know which could not reasonably be prevented by cover or otherwise. The trial court allowed $400 in consequential damages, apparently based upon the necessity of shampooing the carpet which was soaked by leakage of the washing machine, and for overtime wages caused by employees being required to supervise the water level in the machine to prevent leakage and to operate the machine for longer periods of time because only part of the machine was working. Monetary damages proved to have been incurred for those reasons could conceivably be recovered as consequential damages. However, there was no testimony of any dollar amount attached to those items of damage. It is pure conjecture as to how much, if any, monetary damage was caused defendant for those reasons. Hence, at most, Budgetel is entitled to recovery of nominal damages for consequential losses caused by plaintiff's breach. Four hundred dollars is far more than nominal damages. The $400 recovery for consequential damages is modified to $10 representing nominal damages.

Kabco's third assignment of error is sustained to the extent that it is found that the evidence permitted recovery of nominal damages only for consequential losses. The $400 allowed for consequential damages is reversed and the trial court is ordered to allow only $10 for nominal damages.

Kabco's first and second assignments of error are overruled. Kabco's third assignment of error is sustained in part. The judgment of the trial court is affirmed in part and reversed in part. The case is remanded to the trial court to modify the judgment to allow Budgetel $390 less recovery on its counterclaim. The judgment of the trial court is to be revised to reflect a net judgment for Kabco of $553.79.

*Judgment affirmed in part and reversed in part.*

WHITESIDE and MOYER, JJ., concur.