DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from a judgment of the Wood County Court of Common Pleas, which entered judgments in favor of appellees, Diversified Capping Equipment ("Diversified") and Clinton Pattern Works ("Clinton"), and against appellant, MCM Precision Castings, Inc. ("MCM"). For the following reasons, we reverse the judgment of the trial court.
In May 1997, Diversified entered into a contract with Clinton for the purchase of specially manufactured stainless steel castings that were to be incorporated into capping machines, which, in this instance, apply caps to bottles and jars used in the food service industry. Because Clinton is a foundry that does not pour stainless steel, it contracted with MCM for the manufacture of the castings. The cost to Clinton for the castings was $30,466.05; Clinton paid MCM $15,075.78 of that amount, the remainder was to be paid at a later time. Clinton charged Diversified $38,106.74 for the castings. We note that at the time of the purchase, neither MCM nor Diversified knew that Clinton was acting only as a middleman.
Between August 15, 1997 and September 2, 1997, the castings were delivered to Clinton in a total of five shipments. Clinton then delivered the castings to Diversified. Diversified discovered a porosity problem in the castings when they started to machine them. When assembled in a machine and tested under wet conditions, the castings rusted and corroded in a very short period of time (overnight). Diversified's purchasing agent, Jerry Schad, called James Henniger, the President of Clinton, in late August and early September concerning this problem. Henniger, in turn, contacted Doug Kalmbach, the estimator for MCM. It was at this point that at least some of the employees of MCM and Diversified learned of each other's role in the manufacture and the purchase of the castings.
Henniger, Kalmbach and Schad decided to attempt to salvage the castings by subjecting them to processes that might prevent rusting/corrosion. A sample of the castings was "passivated;" however, the rusting/corrosion continued. Another sample was "chrome plated," but the plating had no effect. After consultation with a metallurgist, Diversified sent samples of the castings to H S Inspection Service, Inc., for testing. The results of the test showed that the porosity of the castings, as well as the cracks and gas pockets on the surface of the castings, caused the rusting/corrosion. Therefore, on December 29, 1997, Diversified sent a written revocation of its acceptance of the castings to Clinton.
Subsequently, Diversified filed the instant action against Clinton and MCM. Diversified alleged that Clinton and MCM breached an implied warranty of merchantability and breached an implied warranty of fitness for a particular purpose. MCM answered and raised a cross-claim against Clinton requesting a judgment in the amount of $15,390.27, the unpaid portion of the purchase price of the castings. Clinton answered and advanced four cross-claims against MCM. These were breach of contract, breach of implied warranty of merchantability under the Ohio Uniform Commercial Code (R.C. 1302.27), breach of an implied duty of indemnity, and a request for a declaratory judgment finding that Clinton was not liable to MCM for any additional costs incurred by MCM as a result of the defective castings.
During the course of the proceedings below, the parties stipulated that the damages suffered by Diversified were $37,333.33. The trial court's order embodying the stipulation states that Diversified "shall be entitled to a judgment" in the stipulated amount from one of the defendants. The stipulation provides that liability for the payment of Diversified's damages shall be decided by the trial court's determination of Clinton's cross-claims against MCM, which include breach of contract, breach of warranty and indemnification. The stipulation states that the defendant who is found liable is solely liable for the payment of the stipulated damages and cannot seek contribution from the remaining defendant.
Subsequently, Clinton filed a motion for summary judgment on its claims of breach of implied warranty of merchantability and breach of contract. Clinton pointed out that R.C. 1302.29 provides that, unless excluded or modified, a warranty of merchantability is implied in every contract for the sale of goods if the seller is a merchant with respect to goods of that kind. Clinton argued that the affidavit of its expert, Carl E. Jaske, Ph.D., P.E., showed that the castings manufactured by MCM had serious defects and therefore did not meet the standard of merchantability set forth in R.C. 1302.27(B)(1) and (3). In addition to the affidavit of Carl Jaske, Clinton's summary judgment motion was supported by the affidavit of James Henniger; the depositions of Jerry Schad and Douglas Kalmbach; and other relevant documents.
Clinton also urged that the revocation of the acceptance of the castings was made within a reasonable time after Diversified discovered the defects as required by R.C. 1302.66. In his affidavit in support of the motion for summary judgment, Henniger averred that upon receipt of Diversified's written revocation of acceptance of the castings on December 29, 1997, he immediately notified MCM "of this development." He maintained that he also demanded a refund of the partial payment on the purchase price.
MCM filed a memorandum in opposition to Clinton's motion for summary judgment. In asking the court to deny the motion, MCM relied, in part, on the following provision in its contract with Clinton:
 "(10) Seller warrants title to the goods sold hereunder. There are no other warranties which extend beyond the description on the face hereon. Seller's liability on the contract is specifically limited to the delivered price of the material. Seller may at its option replace or allow credit for any material found defective, * * *. Claims for shortages, defects and erroneous charges must be presented to the seller within ten days after delivery. Buyer's remedies in this paragraph are exclusive of all others."
MCM urged that the foregoing provision permissibly eliminated, under R.C. 1302.29, Clinton's right to obtain relief on a claim of breach of implied warranty of merchantability, as well as the time frame in which Clinton could reject or revoke acceptance of the castings.
In the alternative, MCM contended that it was not provided with reasonable notice, pursuant to R.C. 1302.65. In his affidavit in support of the memorandum in opposition, Donald Marion, Vice-President of MCM, stated that he was informed that the castings were rusting in October 1997 and that possible solutions to the problem were faxed to Clinton. According to Marion, Clinton contacted MCM again, alleging that rusting problems continued. Marion vowed this was the first time that he learned that Diversified was the end user of the castings and that the castings were being incorporated into a capping machine for use in the food service industry. He maintained that a meeting was held in which Clinton was offered further solutions. Marion stated that at the end of the meeting, MCM offered to make new parts for those that were causing the problem, but was told that the problem "would be taken care of." He further asserted that MCM was not contacted again about the alleged defects in the castings until he received a letter from Diversified's attorney in December 1998.
The trial court granted Clinton's motion for summary judgment, finding that the contract between Clinton and MCM gave rise to an implied warranty of merchantability as set forth in R.C. 1302.27. The court further found that the disclaimer in that contract was insufficient, under R.C. 1302.29, to exclude the implied warranty of merchantability. The court also determined that the undisputed affidavit testimony of Clinton's expert established that the castings were not merchantable, and, therefore, Clinton was entitled to summary judgment as a matter of law on this issue. However, the court below held that a triable question of fact existed as to the damages that Clinton could recover.
After a trial on this issue, the common pleas court filed its "Judgment Entry and Memorandum Decision." The court held that Clinton could not recover its lost profits, but it did order MCM to return the partial payment made by Clinton for the castings. MCM was ordered, pursuant to the stipulation, to pay Diversified $37,333.33.
In its first assignment of error, MCM asserts:
 "1. The Trial Court Erred When It Ruled Against Defendant/Appellant MCM precision Castings, Inc., on the Basis of Breach of the Implied Warranty of Merchantability under R.C. 1302.27."
MCM contends that a triable issue of fact exists as to whether Clinton notified MCM, pursuant to R.C. 1302.65, within reasonable time after discovering the defects in the castings.
Our review of the trial court's denial or grant of summary judgment isde novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. A movant can prevail on a motion for summary judgment only if: (1) no genuine issue of material fact remains to be litigated; (2) it appears from the evidence that reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to summary judgment as a matter of law. Civ.R. 56(C);Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus.
Under Ohio's Uniform Commercial Code, a "buyer" is "a person who buys or contracts to buy goods." R.C. 1302.01(A)(1). A "seller" is "a person who sells or contracts to sell goods." R.C. 1302.01(A)(4). "Goods" are all things, including specially manufactured goods, that are "moveable at the time of identification to the contract for sale * * *." R.C.1302.65(A) provides that a buyer must pay the contract rate for goods accepted. Where the tender of goods is accepted, the buyer must, within a reasonable time after he discovers the breach or should have discovered the breach, notify the seller of any breach, including defects in the goods, or be barred from any remedy. R.C. 1302.65(C)(1); Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77 . Generally, the determination of whether the buyer, after accepting the goods, gave the seller timely notice of the unmerchantability of the goods is a question for the trier of fact to be determined by all of the attendant circumstances. ChemtrolAdhesives v. American Mfrs. Mut. Ins. Co. (1989), 42 Ohio St.3d 40,51-52; Kabco Equip. Specialists v. Budgetel, Inc. (1984), 2 Ohio App.3d 58,61.
In the present case, Clinton's president averred that he gave notice of its rejection of the defective castings to MCM, by "immediately" informing MCM of Diversified's December 29, 1997 revocation of acceptance of the goods as purchased from Clinton. On the other hand, while MCM's president acknowledged that he was informed of problems with the castings, he vowed that he was, in essence, never informed by Clinton that it rejected the defective castings pursuant to R.C. 1302.65(C)(1) for breach of an implied warranty of merchantability. According to his affidavit, MCM's president only learned of the alleged breach when Diversified, not Clinton, contacted MCM in December 1998. Based on these circumstances, we must conclude that a triable issue of fact existed as to whether Clinton notified MCM within a reasonable time of its rejection of the acceptance of the stainless steel castings. Accordingly, the trial court erred in finding that Clinton was entitled to summary judgment on its cross-claim for breach of an implied warranty of merchantability as a matter of law. Therefore, MCM's first assignment of error is found well-taken.
In its second assignment of error, MCM maintains:
 "2. The Trial Court Erred When It Ordered Defendant/Appellant, MCM Precision Castings, Inc., to Pay Plaintiff/Appellee, Diversified Capping Equipment, Inc., the Entire Amount of Stipulated Damages."
While MCM's arguments under this assignment of error, are not exactly on point, we agree, for the following reasons, that the trial court could not hold MCM liable for the stipulated damages.
We start with the legal principle holding that even though litigants may stipulate as to facts, they may not stipulate as to what the law requires. Estate of Ralston v. Metropolitan Property and Cas. Ins. Co. (Dec. 19, 2001), Mahoning App. No. 99-CA-305, unreported. Thus, stipulations of law or stipulations as to legal conclusions are not binding upon the court. See Application of McDaniel Motor Co. (1962),116 Ohio App. 165, 167; Estate of Ralston, supra. See, also, State exrel. Leis v. Bd. of Elections (1971), 28 Ohio St.2d 7, 8. Furthermore, stipulations involving legal conclusions do not relieve a trial court of its duty to determine matters "upon its own analysis of the pertinent facts and legal theories." Burdge v. Bd. of Cty. Commrs. (1982),7 Ohio App.3d 356, 357-358.
In the present case, Clinton's cross-claims were based upon a breach of contract and the breach of implied warranty of merchantability, as set forth in R.C. 1302.27. R.C. 1302.27(A) reads, in relevant part:
 "Unless excluded or modified as provided in section 1302.29 of the Revised Code, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * *" (Emphasis added.)
Thus, if Clinton prevailed on its cross-claims leveled against MCM, it could recover the damages allowed in R.C. 1302.88.
However, the undisputed facts of this case reveal that there was no contract between MCM and Diversified. There must be proof of a contract of sale between the seller and the party asserting the implied warranties described in R.C. 1302.27 and 1302.28. Acme Steak Co, Inc. v. GreatLakes Mechanical Co. (Sept. 29, 2000), Mahoning App. No. 98-CA-146, 98-CA-243, unreported. "[A]bsent a contractual relationship between the plaintiff and defendant, an action based upon contract for breach of warranty does not exist." Lawyers Cooperative Publishing Co. v.Muething (1992), 65 Ohio St.3d 273, 276. Consequently, Diversified could maintain only a common law tort action for breach of implied warranty/strict liability against MCM, the manufacturer of an alleged defective product, for economic losses. Chemtrol Adhesives, Inc. v.American Mfrs. Mut. Ins. Co., 42 Ohio St.3d at 49.
A review of Diversified's complaint discloses that this plaintiff apparently attempted to raise the implied warranties set forth in R.C. Chapter 1302 as the basis for its claim against MCM. If this is true, Diversified could not maintain such an action. Moreover, even if Diversified's complaint set forth a breach of warranty/strict liability action in tort against MCM, it is an entirely separate body of law from that applied under Ohio's Uniform Commercial Code. Accordingly, the trial court could not bottom its finding of MCM's liability to Diversified on law applicable to only Clinton's cross-claims. In short, the trial court could not adhere to those stipulations, which, in essence, impermissibly stipulated to the applicable law. Accordingly, MCM's second assignment of error is found well-taken.
On consideration whereof, this court finds that substantial justice was not done the party complaining and judgment of the Wood County Court of Common Pleas is reversed. This cause is remanded to that court for further proceedings consistent with this judgment. Diversified and Clinton are ordered to pay the costs of this appeal in equal shares.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., James R. Sherck, J., and Richard W. Knepper,J., CONCUR.