OPINION
{¶ 1} Plaintiffs-Appellants, Doyle and Louise Johnson ("Appellants"), appeal a decision of the Paulding County Common Pleas Court granting summary judgment with respect to their claims founded upon implied and express warranty in contract and implied warranty in tort relative to their use of an herbicide manufactured by Defendant-Appellee, Monsanto Company ("Monsanto"). Because Appellants were not in privity of contract with Monsanto, they are precluded from maintaining an action for breach of implied warranty in contract; however, questions of fact remain with respect to their claims for breach of express warranty in contract and breach of implied warranty in tort.
 {¶ 2} Facts and procedural history pertinent to the issues raised on appeal are as follows. Appellants have maintained their livelihood through farming operations since the 1970s. In May 1996, Appellants purchased Roundup Ultra, an herbicide manufactured by Monsanto, from Stryker Agricultural Center ("Stryker") in Stryker, Ohio for the purpose of killing weeds in their corn and soybean fields. Appellants applied Roundup Ultra to their fields as part of a tank mixture containing multiple chemicals used for various purposes. Appellants oversee five fields of corn, which were sprayed beginning on May 19, 1996, and completed on June 5, 1996. Likewise, Appellants' six soybean fields were sprayed with a similar mixture, also containing Roundup Ultra, beginning on June 3, 1996, and ending on June 15, 1996.
 {¶ 3} Shortly after applying the herbicide, Appellants' noticed that the weeds were not dying. Thereafter, with the assistance of Stryker, Appellants began attempts to rescue the fields from weed infestation, which would cause a reduction in crop yield if not curtailed, by applying different chemicals. In July, Appellants realized that the weeds were not being controlled; therefore, they contacted Stryker and requested that Monsanto be notified of the problem, alleging that the Roundup Ultra was not working to kill the weeds.
 {¶ 4} At that time, Monsanto provided no response to the complaint and did not send a representative to view Appellants' fields. Stryker made additional attempts to contact Monsanto in August 1996, with similar results. Subsequently, on September 7, 1996, Appellants personally contacted Monsanto about the weed control problem; however, no representative visited Appellants' fields, despite promises to the contrary, until November. By that time, the fields had been harvested and tilled, leaving nothing for the Monsanto representatives to view.
 {¶ 5} Consequently, on April 17, 2000, Appellants filed the subject complaint against Monsanto, alleging that Roundup Ultra was defective as manufactured and failed to conform to the representations made as to its ability to control weeds, resulting in reduced crop yields and added expenditures for rescue attempts. Appellants based their claims upon breach of express and implied warranties in contract and common law implied warranty in tort theories.
 {¶ 6} On April 4, 2001, Monsanto moved for summary judgment. The trial court denied the motion, finding that genuine issues of material fact existed. Thereafter, on August 30, 2001, Monsanto renewed its motion for summary judgment. Upon review thereof, the court granted summary judgment in favor of Monsanto, finding that Appellants' claims were barred by R.C. 1302.65(C) for failing to provide notice of the alleged breach within a reasonable time. In addition, the court held that, notwithstanding the notice requirements, Appellants were only entitled to the replacement costs of the product in question. From this decision, Appellants appeal, asserting the following two assignments of error for our review:
 {¶ 7} "The trial court erred in granting summary judgment in Appellee's favor because Appellee failed to meet its burden to prove that no genuine issue of material fact existed as to whether Appellants failed to give notice was [sic] within a reasonable time."
 {¶ 8} "The trial court erred in granting summary judgment in Appellee's favor on the grounds that Appellants could recover no more than their product replacement costs."
 Standard of Review {¶ 9} Because the arguments presented herein all relate to the trial court's finding of summary judgment in favor of Monsanto, we will begin our analysis by outlining the requisite standard of review.
 {¶ 10} A court may not grant a motion for summary judgment unless the record demonstrates: 1) that no genuine issue of material fact remains to be litigated; 2) that the moving party is entitled to judgment as a matter of law, and; 3) that, after construing the evidence most strongly in the non-movant's favor, reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made.[1] In ruling on a summary judgment motion, the trial court is not permitted to weigh evidence or choose among reasonable inferences; rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the nonmovant.[2] Even the inferences to be drawn from the underlying facts contained in evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the adverse party.[3] Moreover, once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the nonmoving party to show why summary judgment in favor of the moving party should not be had.[4] In addition, appellate review of summary judgment determinations is conducted on a de novo basis;[5]
therefore, this Court considers the motion independently and without deference to the trial court's findings.[6]
 Implied Warranties in Contract {¶ 11} As part of their action, Appellants have attempted to raise the implied warranties set forth in R.C. 1302.27, implied warranty of merchantability, and R.C. 1302.28, implied warranty of fitness for a particular purpose, as basis for relief against Monsanto. As part of Ohio's Uniform Commercial Code ("UCC"), these sections are applicable to "transactions in goods[.]"[7] However, in order to maintain an action founded upon these theories of recovery, proof of a sales contract between the parties must be established.[8] In other words, the parties are required to be in privity of contract before implied warranties under the UCC will attach to a sales transaction.[9]
 {¶ 12} The undisputed evidence herein reveals that Appellants purchased Roundup Ultra from Stryker, not directly from Monsanto. Additionally, uncontroverted evidence shows that representatives of Stryker are not agents of Monsanto and, concomitantly, have no authority to act on behalf on Monsanto. As such, without the benefit of a sales contract directly with Monsanto, Appellants are precluded from raising claims founded on UCC implied warranty theories for want of privity.
 Express Warranties in Contract {¶ 13} As mentioned previously, Appellants also presented claims for breach of express warranty. R.C. 1302.26 defines express warranties, in pertinent part, as "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise" and "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the despcription."[10]
 {¶ 14} While seemingly creating an anomalous result when taken in conjunction with our previous discussion of implied warranties in contract, we find that "to preclude [an action for breach of express warranty under the UCC for a lack of privity] when a manufacturer has induced a party, by way of express warranty, to purchase one of its products from an intermediary would be unconscionable."[11] Otherwise, a party would be able to make express warranties about its products and then shield itself from liability by selling to a middleman who, in turn, sells it to the other party.[12] Consequently, Appellants' claims for breach of express warranty in contract survive despite the absence of privity.
 {¶ 15} The trial court herein held that summary judgment was proper because Appellants failed to give notice of breach to Monsanto within a reasonable time. R.C. 1302.65, which is applicable to express warranty claims,[13] states that when goods have been accepted "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]"[14] The notification requirement allows the seller or manufacturer time to correct the problem.[15] The content of the notification need merely be sufficient to put the party on notice that the "transaction is * * * troublesome and must be watched[,]" and a buyer's rights are saved if notice is given that a breach may be involved, thus opening the door for settlement negotiations.[16] In other words, notice does not have to include a clear statement of all the objections that will be relied on, statements of claimed damages, or threats of litigation.[17]
 {¶ 16} Within the informational packet accompanying Roundup Ultra, Monsanto makes an express warranty that the product "is generally non-selective and gives broad spectrum control of many annual weeds, perennial weeds, woody brush and trees." In reliance upon this statement, Appellants utilized the product for weed control in their fields. Based on the evidence herein, Appellants sprayed their various fields between May 19 and June 15, 1996. Apparently, within a few days of spraying their first fields, Appellants contacted Stryker and informed them that the herbicide was not working; however, because such products often take time to activate, Stryker suggested Appellants "give it a few more days." By June 3, Appellants informed Stryker that the product is "absolutely not working," and rescue treatment discussions began. Thereafter, the remaining fields were sprayed and followed by a rainy period, which postponed any rescue attempts until towards the end of June. Then, on an unknown date in July, Appellants requested that Stryker notify Monsanto of the problem and send a representative to view their fields. When Monsanto continually failed to comply with multiple requests from Stryker to view Appellants' fields, Appellants began personally notifying them on September 7, 1996, resulting in a November visit.
 {¶ 17} In its renewed motion for summary judgment, Monsanto contends that because Appellants did not personally give notice until September 7, notice was not given within a reasonable time. However, based upon the liberal interpretation for what constitutes notice,[18]
as discussed above, we find that the information provided by Stryker on behalf of Appellants would be sufficient to put Monsanto on notice that there was a performance problem with the product. Notwithstanding, a question remains as to whether the notice in July was given timely pursuant to R.C. 1302.65(C).
 {¶ 18} At the outset, we note that the determination of whether a buyer, after accepting goods, gave timely notice of an alleged breach is generally a question for the trier of fact to be determined in consideration of all attendant circumstances.[19] In this case, despite Appellants' knowledge in early June that the Roundup Ultra was not working, there is a lack of evidence relating to the extent of the product's nonperformance at that time or the effects resulting therefrom. Moreover, without any reference to a specific date in July for which notice was provided and the fact that Appellants did not spray their last fields with the product until mid-June, there is a likelihood that reasonable minds could come to differing opinions as to whether notice was timely. Evaluating these facts in a light favorable to Appellants, we find that questions of material fact remain as to whether notice was made within a reasonable time.
 {¶ 19} Furthermore, we also note that the Eighth District Appellate Court has held that "[u]nder most circumstances reasonable notice of defect should be made prior to any attempted repairs[.]"[20]
Evidence in this case reveals that Appellants did initiate rescue efforts prior to providing notice to Monsanto; however, in an emergency situation, resorting to self-help is permissible before notice is given.[21] Accordingly, this presents another question of material fact for a jury to decide: the issue of whether or not Appellants' situation was an emergency could foreclose Appellants' claim that notice was timely.
 {¶ 20} Also related to Appellants' claims involving breach of express warranty is Monsanto's argument that Appellants have no valid warranty claims because they misused the product despite the following warranty contained in the informational booklet: "[t]his company warrants that this product conforms to the chemical description on the label and is reasonably fit for the purposes set forth in the Complete Directions for Use label booklet * * * when used in accordance with those Directions under the conditions described therein." We note that typically "the issues of whether any warranties were created, and, if so, whether they were effectively disclaimed are questions of fact to be determined at trial."[22] Appellants admit that when they sprayed their fields Roundup Ultra was mixed with multiple chemicals, namely Frontier, which was not included in Monsanto's label as being a compatible product with Roundup Ultra. However, in light of the evidence produced thus far, a question of material fact remains as to whether Appellants' misuse was inconsequential to the resulting effects or lack thereof.
 {¶ 21} Appellants stated during deposition that they used Roundup Ultra without mixing it with other chemicals to kill weeds in their yard; however, they observed nothing to support that the product worked. Moreover, deposition testimony from Appellants' expert witness reveals that multiple farmers around the country experienced similar problems with the product. In addition, prior to 1996, Monsanto included Frontier as a compatible chemical within its label for Roundup, which, as testimony indicates, contains the same primary ingredients as Roundup Ultra but with a different formulation. Furthermore, Frontier was added to the Roundup Ultra label in 1997. Expert deposition testimony also indicates that Frontier was not included on the Roundup Ultra label because of a marketing conflict with Lasso, a product similar to Frontier but manufactured by Monsanto. Accordingly, a question of material fact exists as to whether Appellants addition of Frontier to their spray mixture was inconsequential in light of the resulting effects and, in turn, whether Monsanto's breach of express warranty was the proximate cause of the weed control failure.[23]
 {¶ 22} Similar questions of fact are also present with respect to Monsanto's claims that Appellants did not utilize proper screening methods when mixing the chemicals prior to spraying. Appellants' expert witness testified at deposition that their method was a common procedure utilized in farming operations and was not a contributing cause to Appellants' weed control problem. Accordingly, a question of fact remains concerning whether this alleged misuse was the proximate cause of the weed infestation.
 {¶ 23} The trial court herein further held that even if Appellants' notice to Monsanto was reasonable pursuant to R.C. 1302.65, they would only be entitled to the replacement value of the product in question based upon the following disclaimer contained in Roundup Ultra's informational booklet: "THE EXCLUSIVE REMEDY OF THE USER OR BUYER, AND THE LIMIT OF THE LIABILITY OF THIS COMPANY OR ANY OTHER SELLER FOR ANY AND ALL LOSSES, INJURIES OR DAMAGES RESULTING FROM THE USE OR HANDLING OF THIS PRODUCT (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, STRICT LIABILITY, OTHER TORT OR OTHERWISE) SHALL BE THE PURCHASE PRICE PAID BY THE USER OR BUYER FOR THE QUANTITY OF THIS PRODUCT INVOLVED, OR, AT THE ELECTION OF THIS COMPANY OR ANY OTHER SELLER, THE REPLACEMENT OF SUCH QUANTITY, OR, IF NOT ACQUIRED BY PURCHASE, REPLACEMENT OF SUCH QUANTITY. IN NO EVENT SHALL THIS COMPANY OR ANY OTHER SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES."
 {¶ 24} R.C. 1302.93 allows a court to override a limited warranty where the remedy fails of its essential purpose.[24] Under commercial law, a limitation of remedy fails its essential purpose if it deprives the purchaser of the substantial value of its bargain.[25]
Determinations of whether a warranty has failed to fulfill its essential purpose is ordinarily a question of fact for the jury.[26]
 {¶ 25} In this case, Monsanto has attempted to limit their liability to either the cost of the product or replacement thereof. The Ohio Supreme Court has stated that replacement remedies are designed "to give the seller an opportunity to make the goods conforming while limiting the risks to which he is subject by excluding direct and consequential damages that might otherwise arise."[27] Moreover, such limited warranties typically fail when the seller is unable or unwilling to grant such remedy within a reasonable time.[28] Herein, there is evidence that Monsanto was unwilling to replace the product within a reasonable time: despite notice in July, Monsanto did not visit Appellants' fields until November, well after the fields had been harvested.
 Implied Warranty in Tort {¶ 26} Within their complaint, Appellants sufficiently pled a claim based upon the theory of implied warranty in tort, which the trial court neglected to discuss. The right to bring such an action does not depend upon the existence of a contractual relationship between the plaintiff and the defendant,[29] and because Appellants are claiming economic damages, Ohio's product liability statutes have not preempted their claim.[30] Moreover, a breach of implied warranty in tort claim is within an entirely separate body of law from that applied under the UCC.[31] This court has previously found that an action for breach of implied warranty in tort requires the following elements: 1) the existence of a defect; 2) the defect was present at the time the product left the hands of the manufacturer; and 3) the plaintiff's injury was directly and proximately caused by the defect.[32] Each of these elements raise questions of material fact reserved to the trier of fact.
 {¶ 27} Based upon the foregoing rationale, we find that the trial court erred in granting summary judgment in favor of Monsanto because questions of material fact remain. Accordingly, Appellants assignments of error are sustained.
 {¶ 28} Having found error prejudicial to Appellant herein, in the particulars assigned and argued, the judgment of the trial court is reversed and the matter is remanded for further proceedings in accordance with this opinion.
Judgment reversed and cause remanded.
SHAW, P.J., and BRYANT, J., concur.
[1] Civ.R. 56(C); Horton v. Harwick Chemical Corp. (1995),73 Ohio St.3d 679, 686-87.
[2] Jacobs v. Racevskis (1995), 105 Ohio App.3d 1, 7.
[3] Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482,485.
[4] Civ.R. 56(E); Weithman v. Weithman (June 28, 2002), Crawford App. No. 3-02-08, 2002-Ohio-3400, at ¶ 12.
[5] Griner v. Minster Bd. of Education (1998), 128 Ohio App.3d 425,430.
[6] J.A. Industries, Inc. v. All American Plastics, Inc. (1999),133 Ohio App.3d 76, 82.
[7] R.C. 1302.02.
[8] Lawyers Cooperative Publishing Co. v. Muething (1992),65 Ohio St.3d 273, 277, citing Lonzrick v. Republic Steel Corp. (1966),6 Ohio St.2d 227, 230. See, also, Diversified Capping Equip., Inc. v.Clinton Pattern Works Inc. (Apr. 12, 2002), Wood App. No. WD-01-035, 2002-Ohio-2295; Acme Steak Co., Inc. v. Great Lakes Mechanical Co. (Sept. 29, 2000), Mahoning App. No. 94 CV 2401, 2000-Ohio-2566; Brant v.Sreenan's Office Systems/Designs (July 14, 1993), Van Wert App. No. 15-93-1; Pagan v. Stroh Brewery Co. (May 28, 1991), Mahoning App. No. 86 CV 2374.
[9] Id.
[10] R.C. 1302.26(A)(1), (2).
[11] C.W. Zumbiel Co. v. Reichhold Chemicals, Inc. (June 5, 1996), Hamilton App. No. C-950644, quoting Reichhold Chem., Inc. v. Haas (Nov. 3, 1989), Portage App. No. 1983. See, also, Rogers v. Toni HomePermanent Co. (1958), 167 Ohio St. 244, paragraph three of the syllabus.
[12] Haas, supra.
[13] AGF, Inc. v. Great Lakes Heat Treating Co. (1990),51 Ohio St.3d 177, 179.
[14] R.C. 1302.65(C)(1).
[15] Litehouse Products, Inc. v. A.M.I. International, Ltd. (Mar. 8, 1984), Cuyahoga App. No. 46834.
[16] Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co. (1989),42 Ohio St.3d 40, 52, quoting R.C. 1302.65, Official Comment.
[17] Id.
[18] Id. at 54.
[19] Id. at 51-52; Diversified Capping Equip., Inc. v. Clinton PatternWorks Inc. (Apr. 12, 2002), Wood App. No. WD-01-035, 2002-Ohio-2295;Kabco Equip. Specialists v. Budgetel, Inc. (1984), 2 Ohio App.3d 58,61.
[20] Litehouse Products, Inc. v. A.M.I International, Ltd. (Mar. 8, 1984), Cuyahoga App. No. 46834.
[21] Id.
[22] C.W. Zumbiel Co. v. Reichhold Chemicals, Inc. (June 5, 1996), Hamilton App. No. C-950644.
[23] Cf. Cincinnati Ins. Co. v. Maytag Co. (1989), 63 Ohio App.3d 144,149-52. See, e.g., Maine Energy Recovery Co. v. United SteelStructures, Inc. (1999), 724 A.2d 1248, 1250, at ¶ 7; Crosbyton SeedCo. v. Mechura Farms (1994), 875 S.W.2d 353, 361.
[24] R.C. 1302.93(B).
[25] Daniel A. Terrieri and Sons, Inc. v. Alliance Wall Corp. (Mar. 29, 1996), Mahoning App. No. 92 CV 526, citing Ohio Savings Bank v. H.L.Vokes Co. (1989), 54 Ohio App.3d 68, 74.
[26] Chemtrol Adhesives, Inc., 42 Ohio St.3d at 56, citing CayugaHarvester, Inc. v. Allis-Chalmers Corp. (1983), 95 A.D.2d 5; Johnson v.John Deere Co. (S.D. 1981), 306 N.W.2d 231.
[27] Id., citing Beal v. General Motors Corp. (D.Del. 1973),354 F. Supp. 423, 426.
[28] Cf. Id.
[29] Avenell v. Westinghouse Elec. Corp. (1974), 41 Ohio App.2d 150,156; Diversified Capping Equip., Inc. v. Clinton Pattern Works, Inc. (Apr. 12, 2002), Wood App. No. WD-01-035, citing Chemtrol Adhesives,Inc., 42 Ohio St.3d at 49; Ohio Dept. of Adm. Serv. v. Robert P. MadisonInternatl., Inc. (2000), 138 Ohio App.3d 388, 395-97.
[30] LaPuma v. Collinwood Concrete (1996), 75 Ohio St.3d 64,66-67.
[31] Diversified Capping Equip., Inc. v. Clinton Pattern WorksInc. (Apr. 12, 2002), Wood App. No. WD-01-035.
[32] Crow v. Parker (June 29, 1999), Allen App. No. 1-99-13, 1999-Ohio-822.